IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| QUINTIN PALMER, | * |
| Plaintiff, | * |
| vs. | * |
| CORRECT CARE SOLUTIONS, LLC., CORRECTIONAL HEALTHCARE COMPANIES, INC., JOHN DARR *in his individual and official capacities*, COMMANDER DANE COLLINS *in his individual and official capacities*, and Dr. EDET BASSEY, MD, *in his individual and official capacities*, | *<br>*<br>*  CASE NO. 4:17-CV-102 (CDL)<br>*<br>*<br>* |
| Defendants. | * |

O R D E R

One hundred forty-three county jails are spread throughout the state of Georgia, housing tens of thousands of detainees on any given day.[1] Many (perhaps most) of these detainees are awaiting trial and have been convicted of no crime. Thus, they are presumed to be innocent. Someone must address their essential needs during their detention, including the provision

---

[1] According to the Georgia Department of Community Affairs, Georgia county sheriffs reported that there were 38,548 detainees in Georgia county jails as of November 2, 2017. Ga. Dept. of Cmty. Affairs Office of Research, Monthly Jail Report (Nov. 2017), https://www.dca.ga.gov/development/research/programs/documents/JailReportNov17.pdf. For 2017, the lowest number of detainees was 34,697 in January and the highest number was 39,046 in September. *See* Ga. Dept. of Cmty. Affairs Office of Research Monthly Jail Reports, https://www.dca.ga.gov/development/research/programs/jailReports.asp.

of constitutionally mandated food and healthcare. Generally, county sheriffs and the county in which these jails are located share that responsibility--the sheriff operates the jail and the county funds it. Although operational and fiscal responsibility may be clearly demarcated under Georgia law, legal responsibility when something goes wrong apparently is not. And thus, the federal reporters are filling up with cases explaining who can be liable when a county jail detainee's federal constitutional rights are violated because of a failure to provide the detainee with essential needs such as food and medical care.

The issue presently before the Court is whether a county detainee may recover money damages in a federal court against a county sheriff in his official capacity to compensate him for injuries he suffered as a result of the violation of his federal constitutional right to receive constitutionally mandated medical care. The resolution of this issue depends upon whether a county sheriff acts as a state officer when he provides medical care in a county jail. If he does, the Eleventh Amendment to the United States Constitution protects him from liability in his official capacity in federal court.

The implications of a ruling that shields a county sheriff from liability for his unconstitutional conduct in the operation of a county jail are significant. Such a ruling would deprive a

detainee in a county jail who is injured because of the conscious indifference to his medical needs by the county sheriff of a meaningful remedy in federal court against the sheriff for this federal constitutional violation. And if a finding that the sheriff is a state actor means that he is not a county actor, the detainee may also have no remedy against the county pursuant to 42 U.S.C. § 1983.[2] The undersigned previously rejected the notion that neither the county nor the *county sheriff* could be liable for money damages arising from the failure to provide constitutionally mandated medical care to a *county* detainee in a *county* jail. *See Youngs v. Johnson*, No. 4:06-CV-19 (CDL), 2008 WL 4816731, at *7-*8 (M.D. Ga. Oct. 30, 2008). But the Eleventh Circuit has laid additional bricks in the "immunity wall" since the Court rendered that decision, and in light of recent Eleventh Circuit precedent, it appears that the Eleventh Amendment blocks a detainee from vindicating his federal constitutional rights against a Georgia sheriff under such circumstances. *See Lake v. Skelton* (*Lake I*), 840 F.3d 1334, 1339-42, *reh'g denied* 871 F.3d 1340 (2017) (en banc) (holding that a Georgia sheriff acts as an arm of the state when

---

[2] To prevail on a claim against the county under § 1983, the detainee must establish that the sheriff is a final decisionmaker for the county. The Court does not have to decide today whether a finding that a sheriff wears a state hat when performing a particular function automatically precludes a finding that he also wears a county hat when performing that same function. Here, Plaintiff has not sued the county.

3

he provides food to county detainees in a county jail).[3] Although the Eleventh Circuit has not yet held that a Georgia sheriff is protected by the Eleventh Amendment for his failure to provide constitutionally mandated medical care to county jail detainees, a constitutional claim arising from the failure to provide food, which the Eleventh Circuit held in *Lake I* cannot be asserted against a Georgia sheriff in his official capacity in federal court because of the Eleventh Amendment, appears indistinguishable for Eleventh Amendment purposes from a claim arising from the failure to provide medical care.

Plaintiff Quintin Palmer suffers from sickle cell disease. Palmer alleges that he did not receive adequate medical treatment while he was a detainee at the Muscogee County Jail and that he suffered serious injuries as a result. He sued those parties who he claims are legally responsible for his injuries, including the Muscogee County Sheriff and his commanding officer in the county jail. Palmer sued the sheriff and his commander in their official and individual capacities. They seek dismissal of the official capacity claims based on Eleventh Amendment immunity.

---

[3] The Eleventh Amendment wall protecting sheriffs in this Circuit in their operation of county jails rests on the foundational holding in *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), an *en banc* decision with five dissenting judges (Anderson, Barkett, Birch, Tjoflat, and Wilson) and two strongly worded dissenting opinions.

Palmer makes a compelling argument that the Eleventh Amendment was never intended to shield a county sheriff and his officers from liability arising from their failure to provide adequate, constitutionally mandated medical care to those persons entrusted to their care. But Eleventh Amendment precedent in this Circuit has evolved to provide an almost insurmountable wall protecting Georgia sheriffs sued in their official capacities for violating the federal constitutional rights of county jail detainees. Whether that precedent is well-reasoned is of no concern to this Court; the Court is duty bound to apply it. Based on that precedent, this Court must find that the sheriff and his jail commander are entitled to Eleventh Amendment immunity on Palmer's official capacity claims. Their motions to dismiss those claims (ECF Nos. 2 & 17) are therefore granted.

## DISCUSSION

Under the Eleventh Amendment to the U.S. Constitution, "[a] state is immune from a suit for damages in federal court by one of its own citizens." *Lake I*, 840 F.3d at 1337 (citing *Hans v. Louisiana*, 134 U.S. 1, 14–17 (1890)). Many courts have explained the ideological rationale for the Eleventh Amendment. The Amendment "'is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty,' and a purpose of the Eleventh Amendment is to 'accord[ ] the

States the respect owed them as members of the federation' and not to affront the 'dignity' or 'integrity' of a state by requiring a state to respond to lawsuits in federal courts." *Manders v. Lee*, 338 F.3d 1304, 1327-28 (11th Cir. 2003) (en banc) (alteration in original) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39-40 (1994)). As a practical matter, the primary impetus was "the prevention of federal-court judgments that must be paid out of a State's treasury." *Hess*, 513 U.S. at 48.

Eleventh Amendment immunity extends beyond actions that name a state directly as a party. It also protects "an official when he acts [in his official capacity] as an 'arm of the State.'" *Lake I,* 840 F.3d at 1337 (quoting *Manders*, 338 F.3d at 1308). But this immunity "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Therefore, when a government actor's unconstitutional conduct causes harm, zealous lawyers fight mightily over whether that official's conduct arises from the performance of a state function or a local one. This battle is particularly intense when the government official appears to wear two hats from time to time—one for certain state functions and one for local ones. County sheriffs have found themselves in the middle of this fight. Because official capacity claims against a sheriff and his deputies are

6

considered claims against the office of the sheriff, the fundamental question generally becomes whether the office of sheriff was engaged in a state function when its officers committed the alleged unconstitutional conduct.

The precise issue that the Court must resolve today is whether a Georgia sheriff acts as an arm of the State when providing medical care to county jail detainees. If the sheriff acts as an arm of the State when performing this function, then Palmer's official capacity claims against the sheriff and his jail commander are barred by the Eleventh Amendment, and the Court lacks jurisdiction over these claims. *See, e.g., McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment.").

Determining whether a *county* sheriff is a *state* official would seem to be a rather straightforward inquiry. But we have learned that it is not enough that the sheriff is the "Sheriff of Muscogee *County*" or that his law enforcement responsibilities are restricted primarily to the geographic boundaries of the *county* which he serves. It appears to matter little that he is in charge of the *county* jail and that this jail is funded by the *county* taxpayers. In fact, recent precedent suggests that it is not terribly important that the *county* sheriff's budget is funded by the taxpayers who reside within the *county* in which

the sheriff serves and who elect the *county* sheriff. Such facts are brushed aside as the product of superficial analysis that must yield, of course, to one of those "sophisticated" multi-part balancing tests loved by law professors and appellate judges.

The four factors that we district judges have been instructed to balance are: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." 338 F.3d at 1309. In the 2016 published panel decision in *Lake I*, two of the three members of the panel, after weighing these factors, concluded that a Georgia sheriff acts as an arm of the State in *providing food* to county jail detainees. *Lake I*, 840 F.3d at 1340–44.[4] The panel's holding and rationale suggest that it would reach the same conclusion regarding a county sheriff's provision of medical care (or lack thereof) to county jail detainees. *Id.*

In fact, Judge Beverly Martin, in her dissent from the *en banc* majority decision not to rehear the *Lake I* panel decision, made the observation that the decision in *Lake I* meant that Georgia sheriffs would be entitled to Eleventh Amendment

---

[4] Judge Barrington D. Parker, Jr., a United States Circuit Judge for the Second Circuit, sat by designation on the *Lake I* panel and authored a dissent.

8

immunity on medical care claims. *Lake v. Skelton* (*Lake II*), 871 F.3d 1340, 1340 (11th Cir. 2017) (en banc). She stated, "no person in a county jail will be able to sue his jailer (in the jailer's official capacity) for damages in federal court, even where the jailer violated the law by depriving the inmate of life's most basic necessities: food, clothing, and *medical care*." *Id.* at 1346 (Martin, J., dissenting) (emphasis added). In response to Judge Martin's dissent, Judge William Pryor, who authored the panel opinion in *Lake I*, noted that the *Lake I* panel "did not decide whether the sheriff is entitled to sovereign immunity when he provides medical care," and he stated that "a review of Georgia law might lead to a different result in a case about the provision of medical care." *Id.* at 1344. But he did not explain how the provision of medical care was distinguishable from the provision of food for Eleventh Amendment purposes. While it was unnecessary to make that distinction in *Lake I*, it cannot be ignored that *Lake I* (1) examined Georgia statutes that govern both the provision of medical care and the provision of food in Georgia county jails and (2) analogized the sheriff's duty to provide food to county jail detainees to the sheriff's duty to provide medical care to county jail detainees. *See Lake I*, 840 F.3d at 1339-42. Thus, while *Lake I* may not mandatorily bind future panels on the issue

9

of Eleventh Amendment immunity from county jail detainee medical claims, it certainly will constrain them.

Bound by the holding in *Lake I* and constrained by its rationale, this Court can find no distinction for Eleventh Amendment purposes between a county sheriff feeding county detainees in a county jail and a county sheriff taking care of the medical needs of those same county detainees in that same county jail. Thus, with reservations as to whether this analysis reaches the proper constitutional result but with no hesitation that it is required by current binding precedent in this Circuit, the Court finds that the sheriff and his commander are entitled to Eleventh Amendment immunity here.

It is likely sufficient to rest today's holding on a simple proposition: because the provision of medical care cannot be distinguished from the provision of food for Eleventh Amendment purposes, *Lake I* requires a finding of immunity in this case. But for the sake of thoroughness, the Court performs the four part balancing test established by *Manders* as elucidated by *Lake I.*

## I. How State Law Defines the Function

The first factor the Court must consider is how Georgia law defines the function in question. By statute, Georgia assigns certain duties directly to the sheriff. *Lake I*, 840 F.3d at 1339. One of those duties is the duty to furnish medical aid to

county jail detainees. *Id.; accord* O.C.G.A. § 42-4-4(a)(2) ("It shall be the duty of the sheriff . . . [t]o furnish persons confined in the jail with medical aid . . . . to be reimbursed if necessary from the county treasury[.]"). According to *Lake I*'s interpretation of Georgia law, "Georgia courts have interpreted [O.C.G.A. § 42-4-4(a)(2)] as giving sheriffs exclusive control vis-à-vis the county over choosing vendors for medical care." *Lake I*, 840 F.3d at 1339 (citing *Bd. of Comm'rs of Spalding Cty. v. Stewart*, 668 S.E.2d 644, 645 (Ga. 2008)). Other Georgia statutes further specify the sheriff's duties with regard to inmate health in a facility under the sheriff's supervision. O.C.G.A. § 42-4-32(c) requires regular health inspections of jail facilities and requires "adequate separation [of] and treatment given [to]" new inmates. O.C.G.A. § 42-4-32(d) requires that each inmate be "observed daily" and that "a physician shall be immediately called if there are indications of serious injury, wound, or illness." And O.C.G.A. § 42-4-51(b) requires the sheriff to "provide a sick, injured, or disabled inmate access to medical services."

Although state law mandates that a sheriff must provide a minimum level of medical care to detainees in his custody, a strong argument can be made that state law does not clearly establish that the provision of medical care is solely the responsibility of the sheriff. Georgia law also indicates that

11

the county that must fund the county jail shares responsibility for the persons detained in the county jail. Georgia law generally provides that "it shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention[.]" O.C.G.A. § 42-5-2(a). While this mandate certainly applies to the sheriff, it also seems to have application to the county as the "governmental unit . . . having custody of an inmate." *See Middlebrooks v. Bibb County,* 582 S.E.2d 539, 542 (Ga. Ct. App. 2003) ("[A] county has [a] legislative duty to provide an inmate in its custody and care with medical care."), *overruled on other grounds by Tatnall Cty. v. Armstrong*, 775 S.E.2d 573, 576-77 (Ga. Ct. App. 2015). The panel in *Lake I,* however, rejected this interpretation of O.C.G.A. § 42-5-2(a). It concluded that this provision of Georgia law requires "the sheriff to 'take . . . custody of the jail and the bodies of such persons as are confined therein.'" *Lake I*, 840 F.3d at 1340 (quoting O.C.G.A. § 42-4-4(a)(1)). And the sheriff "is the 'governmental unit, subdivision, or agency' having custody of inmates in county jails" for purposes of O.C.G.A. § 42-5-2. Thus, this statutory provision supports the "conclusion that Georgia imposes food-service responsibilities directly on the sheriff as part of his custodial duties." *Id.*

The *Lake I* panel also found it significant that O.C.G.A. § "42-4-32 imposes duties directly on the sheriff, a constitutional officer of the state of Georgia . . . and not on the county in which the jail is located." *Lake I*, 840 F.3d at 1340 (internal citation omitted). According to the *Lake I* panel, this duty set forth in state law "is evidence that the provision of food is a state function under Georgia law." *Id.* The same statute, O.C.G.A. § 42-4-32, sets forth some requirements regarding the provision of medical care. And the Court can conceive of no basis for concluding that the Court of Appeals would find that the provision of food in county jails is a state function, as the panel did in *Lake I,* while concluding that the provision of medical care is not.

Finally, the *Lake I* panel looked to the "broader context and structure of Georgia law." *Id.* at 1341. It noted that the sheriff holds a constitutional office independent of the county and its governing body and that counties "do not delegate power to sheriffs" or have the ability to exercise authority over how a sheriff spends his budget. *Id.* The panel found that "[w]ith respect to county jails, [O.C.G.A. §] 42-5-2 imposes two separate duties: the county must fund the provision of medical care, and the sheriff must select an appropriate provider and ensure that inmates receive care when necessary." *Id.* According to *Lake I,* "[t]he Georgia Court of Appeals has never

13

construed section 42-5-2 to mean that a sheriff acts on behalf of the county when he provides medical care." *Id.* "Instead, the Georgia Court of Appeals . . . distinguishes between the duty imposed by section 42-5-2 on a county to fund medical care and the duty of a sheriff to provide medical care." *Id.* Based on the way the Georgia Supreme Court and Georgia Court of appeals interpreted O.C.G.A. § 42-5-2 with regard to the provision of medical care, the *Lake I* panel found that the duty to feed inmates, like the duty to provide them with medical care, "is not delegated by the county but instead is 'directly assigned by the state.'" *Lake I*, 840 F.3d at 1342 (quoting *Manders*, 338 F.3d at 1319).

In summary, based on the Eleventh Circuit's analysis in *Lake I*, the Court finds that Georgia law defines the provision of medical care to county jail detainees by the sheriff and his staff to be a state function.[5]

## II. Where State Law Vests Control

As to the second factor, the *Lake I* panel concluded that "Georgia law vests control over the denial of [an inmate's] dietary request in the state through the law on feeding inmates

---

[5] If this Court were writing on a blank slate, it would conclude that Georgia law defines the provision of medical care to county jail detainees to be a joint function shared by the sheriff as a state official and by the county as the "owner" and "funder" of the county jail. This does not mean that the sheriff does not act as a state actor when providing such medical care, but this factor may should be weighed differently in the *Manders* calculus if that responsibility is shared with a local government.

14

in county jails and the law on training and disciplining deputies." *Lake I*, 840 F.3d at 1342. The same rationale extends to the provision of medical care in a county jail. As discussed above, Georgia law contains specific provisions governing the provision of medical care to county jail inmates; state law gives the sheriff, who is the officer in charge of the county jail, the function of providing inmates with medical care. In fact, "Georgia courts have interpreted [O.C.G.A. § 42-4-4(a)(2)] as giving sheriffs exclusive control vis-à-vis the county over choosing vendors for medical care." *Id.* at 1339.[6] Furthermore, "[t]he training and discipline of deputies provides further evidence of control by the state." *Id.* at 1343 (explaining how the state has control over training and discipline of sheriff's deputies). Thus, following *Lake I*, the Court concludes that, under Georgia law, the State controls the provision of medical care in a county jail.

---

[6] Palmer notes that when CCG contracted with a private company, Correct Care Solutions, to provide medical care to inmates, the sheriff signed the contract "acting as an agent of CCG." Am. Compl. ¶ 8, ECF No. 11. As discussed above, a county sheriff has the power to select a medical services provider for the county jail, although the county has a duty to pay for medical care to inmates. Under the rationale of *Lake I*, the fact that the sheriff signed the agreement with Correct Care Solutions does not mean that the sheriff is not an arm of the State in providing medical care to inmates in the Muscogee County Jail. But a joint arrangement for the provision of medical care to county detainees may should affect the weight given to this factor in the *Manders* analysis. Moreover, it raises the possibility of a county being legally responsible even if the sheriff acts on behalf of the state if he also represents the county as its final decisionmaker in the joint enterprise of providing medical care to county detainees. The Court does not need to decide that issue here because Plaintiff has not sued CCG.

The Court does note, however, that Palmer's argument to the contrary is not frivolous. The five dissenters in *Manders* read Georgia law to provide that county jails in Georgia are "quintessentially local institutions that exist separate and apart from the state's integrated system of prisons [and that] [t]heir operation is among the responsibilities of the county and, specifically, the county sheriff." *Manders* 338 F.3d at 1332 (Barkett, J., dissenting). The Court also observes that the sheriff's operation of the county jail is not unfettered. County governing authorities have oversight over a sheriff's operation of the county jail through the investigative powers of grand juries, which must inspect jails annually and make recommendations to the county government. *See* O.C.G.A. § 15-12-71(b); *see also* O.C.G.A. § 15-12-78 ("Grand juries shall carefully inspect the sanitary condition of the jails of their respective counties at each regular inspection[.]"). Moreover, a county may be answerable to the federal government for the operation of county jails. Palmer asserts that in a 1999 consent decree between the U.S. Department of Justice and the Columbus Consolidated Government ("CCG"—the consolidated government of Muscogee County and the City of Columbus), the parties agreed that Muscogee County has a duty to provide medical care at the jail and that the sheriff acts on behalf of

the county in providing medical care.[7] While not dispositive, the United States Justice Department's recognition of the county's substantial responsibility for providing medical care to county jail detainees should not be ignored in evaluating the weight to give to the factor of where the state vests control. As noted previously, it is the undersigned's view that the county and the sheriff share responsibility for the provision of medical care in the county jail. This sharing of responsibility supports an argument that this factor is not decisive under the *Manders* calculus.

**III. Source of Funds**

The *Lake I* panel found that the third factor, "source of funding for the function at issue," weighed slightly in favor of immunity. *Id.* at 1343-44. Candidly, the Court does not understand how this can be. The panel in *Lake I* found that state law required the county to pay to provide food to detainees. Likewise, here, state law requires the county to pay for the provision of medical care to detainees. *See Lake I*, 840 F.3d at 1341 ("With respect to county jails, [O.C.G.A. §] 42-5-2 imposes two separate duties: the county must fund the provision

---

[7] Palmer also points out that the sheriff previously sued the Columbus Consolidated Government for failing to appropriate sufficient funding for inmate medical care. He alleged in that action that he was a county officer *within the meaning of O.C.G.A. § 45-9-21(e).* Perhaps he was mistaken, but a more reasonable reconciliation of his opinion of his position and Georgia law is that a Georgia sheriff sometimes wears a state hat, but he sometimes wears two hats, a state one and a county one.

17

of medical care, and the sheriff must select an appropriate provider and ensure that inmates receive care when necessary."). The panel in *Lake I* notes that "[t]he state pays for some of the operations of the sheriff's office, and the county 'bears the major burden of funding [the sheriff's] office . . . because the State so mandates.'" *Id.* at 1344 (alterations in original) (quoting *Manders*, 338 F.3d at 1323). According to *Lake I,* "[u]nder Manders, this factor slightly favors immunity." *Id.* Thus, under *Lake I*'s interpretation of *Manders,* it appears that any time the State imposes an unfunded mandate upon a county that requires the county to perform a function using local county funds, that function becomes a state function, not a county one.[8]

**IV. Responsibility for Adverse Judgments**

"The fourth factor looks to 'the source of the funds that will pay any adverse judgment.'" *Id.* (quoting *Manders*, 338 F.3d at 1324). "[T]he vulnerability of the State's purse" has been recognized "as the most salient factor in Eleventh Amendment determinations." *Hess*, 513 U.S. at 48. According to *Lake I,* "[i]n Georgia, counties are not liable for judgments against the sheriff in his official capacity, . . . and no law requires the state to pay an adverse judgment against a sheriff in his

---

[8] The Court acknowledges that the *Manders* court did not go this far, and specifically stated, "[w]e stress that this case does not involve medical care, which counties have a statutory obligation to provide to inmates in county jails." *Manders*, 338 F.3d at 1323 n.43.

18

official capacity . . . ." *Lake I*, 840 F.3d at 1344. (citations omitted). "Instead, the sheriff 'apparently would have to pay any adverse federal court judgment against him in his official capacity out of the budget of the sheriff's office,' which [according to *Lake I*] 'implicate[s]' 'both county and state funds.'" *Id.* (alterations in original) (quoting *Manders*, 338 F.3d at 1327). With all due respect to the Court of Appeals, it is sheer speculation to conclude that state funds would ever be used in a material way to pay off a judgment against a sheriff in his official capacity for his failure to provide constitutionally mandated medical care to county jail detainees. On the other hand, it is reasonable to conclude that a county, which is mandated to fund the sheriff's operation of a county jail and the provision of medical care to county jail detainees, would have to appropriate sufficient funds to operate the jail taking into consideration that part of those county funds will be used to pay an adverse judgment arising from the operation of that county jail. Thus, it is more likely that the county, not the state, would have to pay for an adverse judgment against the sheriff. Accordingly, this most important factor in the *Manders* analysis would seem to support a denial of Eleventh Amendment immunity. But the *Lake I* panel brushed off this factor concluding that *Manders* supports (or perhaps requires) it to do so. Quoting *Manders,* the *Lake I* panel stated, "[a]t a minimum,

this final factor does not defeat immunity." *Id.* (alteration in original) (quoting *Manders,* 338 F.3d at 1338). In light of the similarity in the way that Georgia law treats the provision of food and the provision of medical care to county jail detainees, the Court has no reason to believe that the Court of Appeals, following *Lake I,* would find this factor dispositive here while summarily dismissing it there.

CONCLUSION

As discussed above, the Court finds that the Eleventh Circuit's decision in *Lake I* requires the Court to conclude for purposes of Eleventh Amendment immunity, that Sheriff Darr and Commander Collins acted as arms of the State in providing medical care to Muscogee County jail detainees. Therefore, the Court grants Darr and Collins's motion to dismiss (ECF Nos. 2 & 17) the official capacity claims against them. Palmer's individual capacity claims against Darr and Collins remain pending, as do all of the claims against the other Defendants.

IT IS SO ORDERED, this 5th day of December, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
